**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-08-489-PHX-PGR (MHB) |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| Charles Richard Brown, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on review of Defendant's conditions of pretrial release.

**I. Procedural History**

A District of Arizona grand jury indicted Defendant on one count of Receipt of Material containing Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and § 2256 (Count I), and one count of Possession of Child Pornography in violation of 28 U.S.C. § 2252A(a)(5)(B) and § 2256 (Count II).  (docket # 1)   Defendant was subsequently arrested, arraigned and temporarily detained pending a detention hearing.  (docket # 3)   On May 30, 2008, Defendant appeared before the undersigned for a detention hearing and was released subject to a combination of pretrial release conditions, including that "[t]he defendant shall not access or possess any pornography." (docket # 7 and # 8 at 4)   No objection was raised by either the Government or defense counsel to this condition. On June 4, 2008, the Government filed a Petition to Revoke

Pretrial Release,[1] alleging Defendant violated the condition that he "shall not access or possess pornography."  (docket # 10)   On June 6, 2008, the undersigned scheduled a pretrial revocation hearing pursuant to 18 U.S.C. § 3148 for June 10, 2008.  (docket # 16)

After Defendant's arrest but prior to the detention hearing, the undersigned realized *sua sponte* that the imposed pretrial release condition that Defendant "shall not access or possess pornography" was declared unconstitutionally vague by the Ninth Circuit in 2002 as a term and condition of supervised release.  *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) (per curiam) (holding that condition prohibiting possession of  "any pornography" without providing further guidance to supervised releasee was unconstitutionally vague even though the offense of conviction was child pornography), *cert. denied*, 537 U.S. 1004 (2002); *contra*, *United States v. Ristine*, 335 F.3d 692 (8th Cir. 2003).  The Court immediately  released Defendant from custody and thereafter deleted Defendant's release condition that he "shall not access or possess any pornography" and, pursuant to 18 U.S.C.(c)(3), conditionally replaced it with the court-approved condition that he "shall not access via computer or possess any photographs or videos of sexually explicit conduct as defined by 18 U.S.C. § 2256(2)" pending an evidentiary hearing on the nexus, if any, between viewing lawful photographs or videos of adults engaging in sexually explicit conduct and child pornography and/or unlawful sexual conduct. *United States v. Adams*, 343 F.3d 1024, 1034-1036 (9th Cir. 2003) ("sexually explicit conduct" in 18 U.S.C. § 2256(2) is neither constitutionally overbroad nor vague) (docket # 19 at 4-5).  Pending such a hearing, the undersigned ordered the Government to produce an expert witness to testify regarding "whether viewing photographs or videos of sexually explicit conduct as defined in 18 U.S.C. § 2256(2) increases the likelihood of viewing child pornography or engaging in sexual illegal activity."  (docket # 14)

---

[1] The Government thereafter filed an Amended Petition to Revoke Pretrial Release, alleging Defendant violated a related release condition.  (docket # 21)

On June 19, 2008, the undersigned conducted a pretrial evidentiary hearing related solely to the subject release condition wherein the Government presented an expert witness, Mr. Robert Emerick, in compliance with the Court's June 9, 2008 order. (docket # 25)   At the conclusion of the hearing, the undersigned dismissed the Petition and Amended Petition to revoke Defendant's pretrial release and ordered that Defendant remain released subject to the same conditions imposed on June 10, 2008.  (docket # 25) As indicated at the June 19, 2008 hearing, the undersigned took the issue, likely one of first impression, under advisement and now issues its order articulating the basis for imposing the pretrial release condition that "defendant shall not access via computer or possess any photographs or videos of sexually explicit conduct as defined by 18 U.S.C. § 2256(2)."

**II. The Bail Reform Act of 1984**

The Bail Reform Act (the "Act") governs the detention of a defendant pending trial.  18 U.S.C. § 3142 (2006).  The Act mandates the release of an individual pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The Act was enacted "to address the growing concern that dangerous defendants were committing crimes while released on bail."  *United States v. Hir*, 517 F.3d 1081, 1089 (9th Cir. 2008).  "Congress . . . enacted the Bail Reform Act of 1984 with the explicit purpose of ensuring that courts would consider the danger posed by releasing a defendant on bail."  *Hir*, 517 F.3d at 1089.

When a district court determines that release without conditions on personal recognizance or unsecured appearance bond "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person" subject to various statutory conditions.  18 U.S.C. § 3142(c).  Section 3142(c) lists several specific release conditions and further provides that the district court may impose "any other condition

that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(xiv).

In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court noted the breadth of legitimate interests Congress could pursue in  restricting pretrial release. 481 U.S. 739, 753 (1987) (rejecting "the proposition that the Eighth Amendment categorically  prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release.")   The Court specifically noted that "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *Id.* at 749.  The Supreme Court further required that bail and release conditions be "reasonably calculated to fulfill" the Government's purpose,  *Stack v. Boyle*, 342 U.S. 1, 5 (1951), and that the "only arguable substantive limitation of the Bail Clause [in the U.S. Constitution] is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754.  Additionally, the Act itself "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); 18 U.S.C. § 3142(c)(B).  Only when "no combination of conditions can reasonably assure the appearance of the [defendant] and the safety of the community" "shall" that defendant be detained pending trial. 18 U.S.C. § 3142(e).

**III. Rationale underlying Condition of Release related to Sexually Explicit Material**

In compliance with this Court's order, on June 19, 2008, the Government offered the testimony of  Mr. Robert L. Emerick, M.Ed., regarding whether "viewing photographs or videos of sexually explicit conduct as defined in 18 U.S.C. § 2256(2) increases the likelihood of viewing child pornography or engaging in illegal sexual activity" while on pretrial release. (docket # 14; docket # 23)   Mr. Emerick, indeed, qualifies as an expert under Rule 702, Fed. R. Evid., in the area of the causes of, and treatment for, sexual deviancy.  He has a bachelor's degree in psychology from Arizona

State University and a masters degree in guidance and counseling with an emphasis in addiction studies from the University of Arizona.  (docket # 23 at 11)   He has worked in the field of violent crimes against children, "particularly in the sexual domain," for 28 years and currently works as a "mental health counselor" specializing in sexual violence.  (*Id.* at 11)   Specifically, he currently works for Bayless & Associates as a consultant, researcher, and completes risk assessments of individuals who are accused and convicted of sexual crimes involving children.  (docket #  23 at 14-15)

Mr. Emerick's past experience includes: working for the Arizona Department of Health Services as a contract clinician providing training regarding cognitive-behavioral treatment of sexual offenders; working for the Maricopa County Adult Probation Department in Phoenix, Arizona as a contract clinician providing assessment and treatment services to sex crimes victims and perpetrators; and establishing a sex-crime treatment program for the Arizona Department of Corrections.  (docket # 23 at 11-12)  Mr. Emerick has also taught various courses related to supervising and managing sexual offenders and has published numerous articles related to sexual offenders.  (docket # 23 at 12-13, 15-16)  Significantly, in 1993, Mr. Emerick published an article on trauma among child survivors of sexual abuse.  (docket # 23 at 12)   In the article, Mr. Emerick discusses the development of the Emerick Scales "which identifies child abuse factors that put younger victims at higher risk for sexual misconduct or sexually restrictive behavior, and . . . identifies those children who seem to have a higher risk to develop pedophilia."  (docket # 23 at 12-13)   The Emerick Scales, named after him,  are embedded in the "Able Assessment" which is used  "as a tool for persons who are placed on supervised release or on probation" to "identify specific treatment needs among molesting populations" and to measure success of the intervention.  (docket # 23 at 13)

Without objection by defense counsel to his qualifications as an expert in this area, Mr. Emerick testified that viewing "adult pornography" is a "pathway, it's a conduit towards exposure to child imagery and the cultivation of a sexual — a specific

sexual interest towards children."  (docket # 23 at 21)  Mr. Emerick explained that when individuals who possess an "obsessive-compulsive element to their personality" view "images that present sexually explicit activities that involve adults," over a period of time the individual "numbs or extinguishes the normative response to adult pictures."  (docket # 23 at 19-20)  The "emerging offender" begins "seeking different images to reclaim [his] arousal level."  (docket # 23 at 20)  As that behavior continues, the emerging offender looks for more diverse images to "create arousal" and eventually begins viewing sexual images of children.  (docket # 23 at 20)   Mr. Emerick  testified that studies reveal that "two-thirds" of people who use "child sex images commit hands-on [sexual] offenses." (docket # 23 at 20)  He specifically testified that "there is a relationship between viewing sexually explicit pornography depicting consenting adults in increasing severity . . . and the potential for viewing child images and/or committing hands-on offenses against children."  (docket #  23 at 29-30)

          In formulating guidelines for sexual offenders on State of Arizona community supervision (similar to federal supervised release) and probation, Mr. Emerick indicated that such individuals should not be permitted access to sexually explicit materials involving adults.  (docket # 23 at 22)  Mr. Emerick explained that because of the obsessive-compulsive component of such individuals' personalities, they are unable to responsibly interact with sexually explicit material and will continue to seek out "diversity and stimuli to experience sexual arousal."  (docket # 23 at 22-23)   He further explained that "if someone's not capable of responsibly interacting with that medium, then we are charged with the responsibility of restricting access to that medium for the protection of the probationer, as well as the community at large."  (docket # 23 at 23) "[F]rom a clinical perspective, the safe assumption is that [an individual who allegedly possessed child pornography has] already demonstrated irresponsible use of a dangerous medium. Dangerous is an acceptable term. And so you want to restrict access."  (*Id*.)

          Mr. Emerick specifically testified that based on his 28 years of experience and training, the pretrial release condition that an individual charged with child

pornography, like Defendant, not "possess sexually explicit materials of any kind, whether they involve minors or adults, . . . is a condition that will help protect the public from a person who's on pretrial release for child pornography offenses."  (docket # 23 at 24-25)  He further stated that such a condition is "more than a well-thought-out recommendation or condition for community safety, but it establishes a template for guiding the Defendant towards health . . . ."  (docket # 23 at 25)   Thus, he concluded that in his professional opinion, "it's reasonable with someone who's charged  with child pornography to prohibit [him] from viewing sexually explicit conduct [as defined] under federal law as a condition of  [pretrial] release[.]"  (docket # 23 at 39-40)

In view of  Mr. Emerick's expert testimony and the nature of the charges against Defendant, the undersigned finds that the pretrial release condition that "[t]he defendant shall not access via computer or possess any photographs or videos of sexually explicit conduct as defined by 18 U.S.C. § 2256(2)"  "is reasonably necessary . . . to assure the safety of any other person and the community" and is reasonably related to the crimes for which Defendant is charged. 18 U.S.C. § 3142(c)(xiv).

Although this Court has not found any reported cases discussing the imposition of such a condition in the context of pretrial release, the Ninth Circuit has approved similar conditions for supervised  release following conviction.  In *United States v. Rearden*, 349 F.3d 608, 619-20 (9th Cir. 2003), where defendant was convicted of shipping child pornography over the internet, the Ninth Circuit affirmed a special condition of supervised release prohibiting defendant from possessing "any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)."  *Rearden*, 349 F.3d at 619.  The Ninth Circuit upheld the restriction because "[a] defendant's right to free speech may be abridged to effectively address [his] sexual deviance problem." *Id*. (citations omitted); *see also United States v. Cope*, 527 F.3d 944, 958 (9th Cir. 2008) (reaffirming the Ninth Circuit's approval of a supervised release condition prohibiting a defendant who has been convicted of possession of child pornography in violation of 18 U.S.C. § 2252A(a) (5)(B)).  The court in *Rearden* further found that the condition

"furthered the goals of rehabilitating [the defendant] and protecting the public." *Rearden*, 349 F.3d at 620.  Similarly, in *United States v. Boston*, a case in which the defendant was convicted of producing child pornography, the Eighth Circuit Court of Appeals affirmed a condition which prevented the supervised releasee from possessing any form of pornography, sexually stimulating material, or sexually oriented material for life.  494 F.3d 660, 668 (8th Cir. 2007).  The court determined that the condition was reasonably related to the offense of conviction and to defendant's history and characteristics, and that the condition would deter future criminal conduct and protect the public.  *Id.* at 667-68; *Ristine*, 335 F.3d at 694-95.

The foregoing cases involving supervised release conditions are relevant to analyzing the condition of pretrial release at issue in this case. Although Defendant has not yet been convicted and enjoys the presumption of innocence, the goals of pretrial release conditions include assuring the safety of the community, one of the same goals that supervised  release conditions are designed to promote.  *See* 18 U.S.C. § 3583(d) and 18 U.S.C. § 3553(a).  Title 18 U.S.C. § 3583(d) authorizes the district court to order special conditions of supervised release if such conditions are reasonably related to the factors contained in 18 U.S.C. § 3553(a).  *Rearden*, 345 F.3d at 618 (citing *United States v. Gallaher*, 275 F.3d 784, 793 (9th Cir. 2001)).  Section 3553(a) provides, in relevant part, that "[t]he court shall impose a sentence sufficient, but not greater than necessary . . . to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a). Likewise, the Bail Reform Act, authorizes a district court to impose the least restrictive conditions of pretrial release that promote essentially the same goal, "assur[ing] the safety of any other person and the community."  18 U.S.C. § 3142(c)(xiv).

This case is distinguishable from the Ninth Circuit's decision in *United States v. Scott*, 450 F.3d 863, 872 n. 11 (9th Cir. 2006), wherein the Ninth Circuit considered pretrial release conditions other than those designed to secure an accused's presence in court and the safety of the community.  In *Scott*, the defendant was arrested on Nevada charges of drug possession and released on his own recognizance.  *Scott*, 450

F.3d at 865.  As a condition of his pretrial release, defendant was required to sign a form agreeing to comply with several conditions including "random" drug testing without a warrant and that his home be searched for drugs without a warrant.  *Scott*, 450 F.3d at 865.  *Scott* was a Fourth Amendment case concerning defendant's motion to suppress evidence found in a warrantless search of defendant's home.  The issue in *Scott* was whether defendant waived his Fourth Amendment rights by consenting to pretrial release conditions allowing law enforcement officials to conduct warrantless searches of his home.  *Id.* at 865.  The Ninth Circuit concluded that defendants on pretrial release do not waive their Fourth Amendment rights through consent to pretrial release conditions; thus, searches must be supported by probable cause under the Fourth Amendment to be lawful.  *Id.* at 868.  In analyzing the disputed search in *Scott*, the court determined that defendants on pretrial release do not have reduced expectations of privacy like probationers and supervised releasees. *Id*. at 873.  "[T]he assumption that [the defendant] was more likely to commit crimes than other members of the public," did not authorize the Government to "short-circuit" the search warrant process.  *Id*. at 874.  "Just as the government cannot detain an individual for dangerousness merely because he has been arrested, the government cannot order warrantless searches based on the assumption that the defendant will commit further crimes." *United States v. Gardner*, 523 F.Supp.2d 1028, 1034, (N.D.Cal. 2007) (discussing *Scott*, 450 F.3d at 874).

Unlike the district court in *Scott*, this Court is not assuming that merely with Defendant's arrest that he is more likely than the general public to commit sexually-related crimes while on release.  Rather, the Court is relying upon expert testimony of an unchallenged expert on sexual deviancy, Mr. Robert Emerick, that "there is a relationship between viewing sexually explicit pornography depicting consenting adults in increasing severity . . . and the potential for viewing child images and/or committing hands-on offenses against children."  (docket # 23 at 29-30)

In summary, Defendant has been indicted for receiving and possessing child pornography; hence, probable cause exists that Defendant committed these sexually-

related crimes.  Mr. Emerick testified that "there is a relationship between viewing sexually explicit pornography depicting consenting adults . . . and the potential for viewing child images and/or committing hands-on offenses against children." (docket # 23 at 29-30)  In view of that relationship, the pretrial release condition that "[t]he defendant shall not access via computer or possess any photographs or videos of sexually explicit conduct as defined by 18 U.S.C. § 2256(2)," is a condition that will further protect the public from Defendant, while on pretrial release.  (docket # 23 at 24-25)  Such a condition directly serves the Government's "legitimate and compelling" pretrial goal of protecting the public, *Salerno*, 481 U.S. at 749, and constitutes only a limited abridgement of Defendant's First Amendment rights for a relatively short period of time.[2] *United States v. Bahe*, 201 F.3d 1124, 1134 (9th Cir. 2000) (quoting *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir.1998) (A defendant's right to free speech may be abridged to "'effectively address [his] [alleged] sexual deviance problem.'"); *United States v. Murtari*, 2008 WL 687434 (N.D.N.Y. 2008) (pretrial release condition was reasonable and was limited to encroaching upon defendant's First Amendment rights only to the extent necessary based upon the magistrate judge's findings.)

    Accordingly,

    **IT IS ORDERED** that Defendant's pretrial release condition that he "shall not access via computer or possess any photographs or videos of sexually explicit conduct as defined by 18 U.S.C. § 2256(2)" is hereby **AFFIRMED**.

    Dated this 14th day of July, 2008.

                                    Lawrence O. Anderson
                                 United States Magistrate Judge

_____

[2] Defendant's trial is currently set for September 9, 2008. (docket # 20)

- 10 -